POWERHOUSE PRODUCTIONS, INC., Appellant

v.

Eric Tolman SCOTT, Appellee.

No. 05–07–00700–CV.

Court of Appeals of Texas, Dallas.

Aug. 8, 2008.

Jeffrey L. Clark, Kelsoe, Anderson, Khoury & Clark, P.C., Dallas, TX, for Appellant.

John F. Redwine, Redwine Law Offices, Dallas, TX, for Appellee.

Before Justices WRIGHT, BRIDGES, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

This case involves a confidentiality and non-compete agreement in the unique field of personal rocket pack flying. Powerhouse Productions, Inc. appeals the take-nothing judgment following a trial before the court on its suit for injunctive relief against Eric Tolman Scott. We affirm the trial court's judgment.

## BACKGROUND

Howard Gibson, Jr. owned a company in which he flew using a personal rocket pack, which he called the Rocketbelt. Gibson flew with the rocket pack for events around the globe on every continent except South America and Antarctica. In 1993, appellee started work for Gibson. Appellee signed an employment agreement with

Gibson and his wife, Sheri Gibson. The 1993 contract contained a non-compete provision in which appellee promised not to perform any services for or have any financial interest in any person or entity in competition with Gibson for five years after the termination of the contract. Appellee also promised not to disclose any of Gibson's confidential information. The contract was for a maximum term of seven years. Appellee's compensation under the agreement was a monthly retainer fee plus performance fees for each show flight. In 1996 or 1997, the Gibsons incorporated their business, creating appellant. However, appellee did not sign an employment contract with appellant at that time. After appellee's written employment contract with the Gibsons expired in 2000, the parties continued their relationship following the terms of the expired contract but with increases in appellee's performance fees.

Working for Gibson, appellee learned everything about the operation, maintenance, fuel manufacturing, and fueling techniques of Gibson's machine. Gibson taught appellee how to fly the machine, and when appellee had sufficiently mastered the machine, appellee flew the machine in shows. From 1994 to 2004, Gibson's business was the only one in the world doing commercial shows with a rocket pack pilot. Gibson and appellant charged their clients $15,000 to $25,000 per flight. During that time, appellee made over 400 flights for Gibson and appellant on all continents except Antarctica.

On February 4, 2004, shortly before appellee was to leave to fly with the rocket pack in shows in Florida and Trinidad–Tobago, Gibson presented appellee with a "Confidentiality and Non–Compete Agreement." The non-compete portion of the agreement provided that for five years after appellee's employment with appellant,

> Employee shall not, directly or indirectly, own (partially or wholly), manage, operate, control, be employed by, participate in, consult financing, sales, marketing, or control of any business that manufactures, sells or distributes or performs flights of, the Rocketbelt, or any other type of product sold, distributed or offered by Powerhouse Productions, Inc. during the period of his employment with Powerhouse Productions, Inc.

The confidentiality portion of the agreement provided that appellant would not use or disclose appellant's confidential information. The agreement stated the consideration for these promises was "the opportunity to become a Pilot of Powerhouse Productions, Inc." Gibson told appellee that if he did not sign the agreement, he could not perform in the shows. Appellee signed the agreement. In October or November 2004, appellee and appellant terminated their relationship.[1]

Meanwhile, in Colorado, Troy Widgery and his company, Jet P.I., were designing and building a rocket pack, which Widgery called the Jetpack. When appellee left appellant's employ in late 2004, he contacted Widgery about a job. Widgery agreed to hire appellee, but Widgery would not permit appellee to begin working until Widgery's rocket pack was completed. The rocket pack was completed and successfully tested in December 2004, and appellee went to work for Jet P.I. beginning in 2005. Appellee testified that Jet P.I. had its own systems in place for manufacturing fuel, fueling the machine, and training, and appellee made no suggestions to Jet P.I. how to improve those proce-

---

**1.** The evidence is disputed whether appellee resigned or was terminated. However, that question is not relevant to our determination of the issues on appeal.

dures. Appellee also testified that he made no suggestions about the design of Jet P.I.'s rocket pack. Appellee flew the rocket pack in shows in Mexico, Holland, and Niagara Falls in support of another company of Widgery's, "Go Fast." Jet P.I. did not charge a fee for the performances.

After Gibson saw the news coverage of appellee's flights for Jet P.I., appellant filed suit seeking to enjoin appellee from violating the terms of the 2004 Confidentiality and Non–Compete Agreement. After a trial before the court, the court rendered judgment that appellant take nothing. In compliance with an order from this Court, the trial court filed findings of fact and conclusions of law stating the Confidentiality and Non–Compete Agreement was not supported by valid consideration and that appellee did not disclose confidential information.

## APPELLATE PROCEEDINGS

In the trial court, appellant timely requested findings of fact and conclusions of law, and when the court failed to file them, appellant timely filed a reminder of overdue findings and conclusions. The court still did not file findings and conclusions. Appellant's first issue in its original brief was that the trial court erred in failing to file findings and conclusions. Appellant's original brief also presented four other issues alleging the trial court erred in not determining that appellee signed but failed to comply with the non-compete provisions of the February 2004 Confidentiality and Non–Compete Agreement, erred in not reforming the geographic area of the non-compete provisions to a reasonable geographic area, and erred in not determining that the non-compete provisions were enforceable because they were ancillary to or part of an otherwise enforceable agreement.

After submission of the cause, we ordered the trial court to file findings of fact and conclusions of law and abated the appeal to permit the trial court to do so. The court filed its findings of fact and conclusions of law, and we permitted the parties to file supplemental briefs based upon the trial court's findings and conclusions. Appellant filed a supplemental brief asserting a single issue, that the trial court erred in concluding the 2004 Confidentiality and Non–Compete Agreement failed for lack of consideration.

Because the trial court filed findings of fact and conclusions of law, appellant's first issue in its original brief is moot. Because of our resolution of appellant's supplemental issue, we need not address appellant's second through fifth issues in its original brief. See Tex.R.App. P. 47.1.

## STANDARD OF REVIEW

Findings of fact in a case tried to the court have the same force and effect as jury findings. See Pulley v. Milberger, 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex.1986); OAIC Commercial Assets, L.L.C. v. Stonegate Village, L.P., 234 S.W.3d 726, 736 (Tex.App.-Dallas 2007, pet. denied); Mullins v. Mullins, 202 S.W.3d 869, 874, 876–77 (Tex.App.-Dallas 2006, pet. denied).

Where an appellant attacks the trial court's findings of fact on legal or factual sufficiency grounds, the applicable standard of review is the same as that applied in the review of jury findings. OAIC Commercial Assets, L.L.C., 234 S.W.3d at 736. In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole

rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985).

### COVENANTS NOT TO COMPETE

■ Section 15.50 of the Texas Business and Commerce Code governs non-compete agreements. That provision provides,

a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM.CODE ANN. § 15.50(a) (Vernon 2002). The enforceability of a non-compete agreement is a question of law. *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644 (Tex.1994).

In this case, the non-compete agreement is part of the 2004 Confidentiality and Non–Compete Agreement. The issue is whether that agreement is enforceable.

■ For a non-compete agreement to be enforceable, it must be supported by consideration. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex.2006). "The covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer." *Id.* The consideration from the employer "must give rise to the employer's interest in restraining the employee from competing." *Id.* at 648–49.

■ In this case, the agreement recites as consideration "the opportunity to become a Pilot of Powerhouse Productions, Inc." At the time appellee signed the agreement, he had been working as a pilot for appellant from the day of its incorporation, and before that, for appellant's predecessors in interest, the Gibsons. The trial court concluded the stated consideration was insufficient as a matter of law.[2]

2. Concerning the consideration for the agreement, the trial court's findings and conclusions state,
   > The 2004 Agreement (and thus the covenant not to compete) fails for lack of consideration.
   > a. By its express terms, the 2004 Agreement imposed obligations only on Defendant. In the first sentence: Defendant "hereby agrees to and with [Plaintiff] as follows:"
   > b. In the 2004 Agreement, Defendant agreed to refrain from a long list of conduct. Plaintiff, on the other hand, did not agree to do or refrain from anything.
   >
   > c. The 2004 Agreement recited that the "consideration" for Defendant's promises was the "opportunity to become a Pilot for" Plaintiff. The 2004 Agreement contained no other consideration to support Defendant's promises.
   > d. At the time that the 2004 Agreement was executed, Defendant was already a pilot for Plaintiff and had worked in this capacity for over 11 years.
   > e. The recited consideration, therefore, is insufficient as a matter of law for at least two reasons.
   > (1) First, the recitation is clearly false. Defendant's promises could not have been in exchange for the opportunity

On appeal, appellant does not assert the stated consideration was sufficient but contends there was other unstated consideration that supported the agreement.

Appellant argues that appellee received consideration in the form of continued opportunities to pilot the rocket pack. We disagree. In *Sheshunoff*, the supreme court observed that the Texas Legislature and the courts "would not allow an employer to spring a non-compete covenant on an existing employee and enforce such a covenant absent new consideration from the employer." *Id.* at 651. If the mere opportunity to continue performing one's job could be consideration, then an employer could "spring a non-compete covenant on an existing employee and enforce such a covenant absent new consideration," something the supreme court stated is prohibited. *See id.* Moreover, appellant's act of permitting appellee to fly the rocket pack does not "give rise to [appellant's]

interest in restraining [appellee] from competing." *See id.* at 648–49.

Appellant also argues the 2004 Confidentiality and Non–Compete Agreement was supported by the consideration of past and future provision of confidential information and training. It is undisputed that appellee learned everything he knew about the rocket pack and how to fly a rocket pack while working for the Gibsons and appellant. However, the training and confidential information appellant and the Gibsons provided appellee before he signed the non-compete agreement cannot form the consideration for the agreement because past consideration is not competent consideration for contract formation. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex.App.-Austin 2004, pet. denied). Appellant also argues it provided appellee with confidential information and training after appellee signed the agreement, which is the type of consideration that may support a non-com-

to *"become"* a pilot for Plaintiff. The evidence is undisputed that Defendant *became* a pilot for Plaintiff several years earlier. False recitations of consideration are insufficient to support a contract.

(2) Second, if corrected, the recitation should have said: the opportunity *to continue* as a pilot for Plaintiff. Continued employment is insufficient consideration to support a contract. This purported consideration is particularly illusory here as Mr. Gibson testified that, at the time, his understanding was that Defendant could only be fired for cause. Thus, Mr. Gibson believed that, absent cause, Plaintiff had no choice but to allow Defendant to continue as pilot for Plaintiff.

f. Based on the greater weight of credible evidence, the Court finds that Defendant was not given anything of value in exchange for signing the 2004 Agreement.

g. The provision of the 2004 Agreement pertaining to confidential information (*i.e.*, Section One) does not provide any consideration here.

(1) The obligations here flow in only one direction: Defendant promised not to disclose confidential information. Unlike the situation presented in *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex.2006), in the 2004 Agreement, Plaintiff did not promise to give Defendant any confidential information or even any access to such information.

(2) In any event, such a promise would have been illusory. Unlike the 2004 Agreement, the 1993 Agreement did specify that Defendant would have access to confidential information. Evidence was presented that Plaintiff did provide defendant with confidential information during his employment. There was no evidence, however, that Defendant was provided with any confidential information after the date of the 2004 Agreement (*i.e.*, February 24, 2004). Thus, any provision of confidential information to Defendant occurred prior to the 2004 Agreement and thus could not constitute the required consideration.

pete agreement. *See Sheshunoff,* 209 S.W.3d at 655 (non-compete agreement in which employer promises to provide employee with confidential information and specialized training becomes enforceable when the information and training are provided). However, the trial court found "[t]here was no evidence . . . that [appellee] was provided with any confidential information after the date of the 2004 Agreement. . . ." Gibson testified that after appellee signed the agreement, he received more training and confidential information in the form of knowledge of modifications to the rocket pack, to the motor building procedure, and to the security procedures. Appellee, however, testified that he did no additional training after signing the agreement and did not receive any new safety equipment. The trial court stated in its findings and conclusions, "based on the greater weight of credible evidence, the Court finds that Defendant was not given anything of value in exchange for signing the 2004 Agreement." To the extent appellant's briefing may challenge the legal and factual sufficiency, we conclude the evidence is both legally and factually sufficient to support this finding.

Moreover, any training and confidential information was not provided as consideration for appellee signing the agreement. The only consideration cited in the agreement is "the opportunity to become a Pilot of Powerhouse Productions, Inc." Appellant and the Gibsons made no promise to provide appellee more training or confidential information in exchange for his signing the agreement, and the evidence does not show appellant or the Gibsons provided appellee with additional training or confidential information because he signed the agreement.

Appellant also argues that the supreme court indicated in *Sheshunoff* that the adequacy of consideration should be considered under the test for the reasonableness of the covenant not to compete and not under "a pure technical analysis consideration." In *Sheshunoff,* the court stated at the beginning of its opinion that the issue before it was "whether an at-will employee who signs a non-compete covenant is bound by that agreement if, at the time the agreement is made, the employer has no corresponding enforceable obligation." *Sheshunoff,* 209 S.W.3d at 646. In the non-compete agreement, the employer promised to provide the employee with training in the employer's business methods and confidential information, such as customers and prospects. The employee promised not to disclose the confidential information and not to compete with the employer for one year after termination of the employment relationship. *Id.* at 647. As it was an employment-at-will relationship, the employer's promise to provide training and confidential information was illusory because the employer could terminate the employee without providing the training and confidential information. *Id.* at 650. The court went on to hold that the agreement became enforceable when the employer delivered the promised consideration by providing the training and confidential information. *Id.* at 655. In the midst of this discussion, the court emphasized the importance that there be consideration and that the consideration given by the employer give rise to the employer's interest in restraining the employee from competing. *Id.* at 650. The court concluded that the employer had provided consideration for the non-compete agreement by providing the employee with the promised training and confidential information. *Id.* at 647, 655. The court then added the language on which appellant relies:

> We also take this opportunity to observe that section 15.50(a) does not ground the enforceability of a covenant not to compete on the overly technical disputes

that our opinion in *Light* [*v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex.1994),] seems to have engendered over whether a covenant is ancillary to an otherwise enforceable agreement. Rather, the statute's core inquiry is whether the covenant "contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM.CODE § 15.50(a). Concerns that have driven disputes over whether a covenant is ancillary to an otherwise enforceable agreement—such as the amount of information an employee has received, its importance, its true degree of confidentiality, and the time period over which it is received—are better addressed in determining whether and to what extent a restraint on competition is justified. We did not intend in *Light* to divert attention from the central focus of section 15.50(a). To the extent our opinion caused such a diversion, we correct it today.

*Id.* at 655. Appellant argues that the trial court erred because it "focused exclusively on consideration, the very diversion that *Sheshunoff* warned against."

We disagree. *Sheshunoff* did not purport to replace the requirement that there be consideration for a non-compete agreement. Instead, the issue of the sufficiency of the consideration may become a part of the reasonableness test after the court first determines there was some consideration. *See Sheshunoff*, 209 S.W.3d at 651 ("[A]n agreement not to compete, like any other contract, must be supported by consideration."). In *Sheshunoff*, the court first determined there was consideration— the employer's providing the promised training and confidential information—and then, in a separate analysis, determined the non-compete agreement was reasonable. *Id.* at 655–57. In this case, however, the trial court could not proceed to the reasonableness of the non-compete agreement because it found there was no consideration for the agreement.

We overrule appellant's supplemental issue, and we affirm the trial court's judgment.