NUMBER 13-08-00201-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


VALLEY DIAGNOSTIC CLINIC, P.A., Appellant,


v.



JOSEPH C. DOUGHERTY, M.D., Appellee.

 



On appeal from the 107th District Court of Cameron County, Texas.


 


O P I N I O N



Before Justices Rodriguez, Garza, and Benavides


Opinion by Justice Garza



 In this case, we are asked whether a covenant not to compete incorporated into a
professional association's bylaws is enforceable. Appellant, Valley Diagnostic Clinic, P.A.
("VDC"), challenges the trial court's judgment in favor of appellee, Joseph C. Dougherty,
M.D., contending by eleven issues that the trial court erred in determining that a deferred
compensation forfeiture clause contained in VDC's bylaws is unenforceable as a unlawful
restraint of trade. We affirm.

I. Background

 VDC is a medical clinic established in April 1998 in Harlingen, Texas. Dr.
Dougherty, a nephrologist, entered into a "Physician Employment Agreement" with VDC
on July 1, 1999, which provided in part that VDC would be entitled to receive all fees
generated by Dr. Dougherty for professional services. In exchange, Dr. Dougherty would
receive regular compensation from VDC in the amount of "47.5% of the net collected
receivables attributed solely to [Dr. Dougherty's] professional fees," with the exact
percentage subject to change annually by VDC's board of directors.

 In July 2000, VDC adopted bylaws which included a deferred compensation
program for its shareholder physicians. Specifically, section 6.4 of the bylaws provided as
follows:

 6.4 Deferred Compensation. Subject to Section 6.4(c) below, upon
the first day of the month following his separation from service, and on the
first day of each of the ensuing forty-seven (47) months, each Member shall
be entitled to receive a deferred compensation amount determined as
follows:


 (a) Existing Members: Those who are Members
(shareholders) on November 30, 2001 ("Existing Members") shall be
entitled to receive a monthly deferred compensation amount
equivalent to his/her share, proportionate to the number of Members
(both Existing and New), of 1/48 of:


 (1) 90% of the estimated collectible accounts
receivable of the Association, as determined by the
Association's Executive Director, plus 100% of the
Association's Cash,


 less


 (2) the amount of all Association Liabilities, including
Association's indebtedness from all sources, accounts
payable, and accrued payroll and benefits.


An Existing Member shall also be entitled to receive an additional deferred
compensation amount equivalent to his/her share, proportionate to the
number of Existing Members, of 1/48 of the fair market value of the
Association's Tangible Assets, as determined by a majority of the Members,
or by a qualified medical practice appraiser, if agreement cannot be reached.


 . . . .


 (c) Restrictions Applicable to Existing Members and New
Members: If a Member separates from service within four (4) years
of becoming a Member, he/she shall be entitled to receive only a
portion of the above-described deferred compensation payments, in
accordance with the following schedule:



Years

as a

Member
Percentage of
Deferred
Compensation
Entitlement
less than 2 years

2 years but less than 3

3 years but less than 4

4 years or more
0%

50%

75%

100%


 In addition, if a Member with any degree of seniority separates from
service and practices medicine during the next four (4) years, within
a 50-mile radius of Harlingen, Texas, such former Member shall forfeit
his/her entitlement to any remaining monthly deferred compensation
payments from the Association. Such forfeiture shall constitute
liquidated damages to reasonably compensate the Association for
harm suffered by it due to such former Member's competition. 
Although this does not represent an express covenant not to
compete, the Association nevertheless shall comply with the
provisions of § 15.50(b) of the Texas Business and Commerce Code;
such provisions are hereby incorporated by reference into these
Bylaws.


(Emphasis in original.)

 On or about August 26, 2004, VDC informed Dr. Dougherty that he had violated
certain provisions of his employment agreement. (1) VDC decided to terminate Dr.
Dougherty's employment pursuant to a clause in his employment agreement providing that
he may be terminated without cause upon ninety days' notice. VDC gave Dr. Dougherty
notice of his termination on September 7, 2004, and the termination took effect on
December 7, 2004. In December 2004, Dr. Dougherty set up a separate nephrology
practice in Harlingen. Subsequently, VDC refused to make monthly deferred
compensation payments to Dr. Dougherty, contending that he forfeited his rights to receive
those payments under the final paragraph of section 6.4 of the bylaws (the "forfeiture
clause").

 Dr. Dougherty sued VDC on April 19, 2005, alleging wrongful termination and
contending that VDC's refusal to make deferred compensation payments to him amounted
to a breach of contract and breach of fiduciary duty. (2) Dr. Dougherty later amended his
petition, seeking declaratory relief in the form of a judgment stating that the forfeiture
clause is an unenforceable covenant not to compete. See Tex. Bus. & Com. Code Ann.
§§ 15.50-.52 (Vernon Supp. 2008) (setting forth criteria for the enforceability of covenants
not to compete). The amended petition requested judgment against VDC for failing to pay
Dr. Dougherty's deferred compensation and for attempting to enforce the forfeiture clause,
as well as for attorney's fees and interest.

 VDC moved for summary judgment, contending that the forfeiture clause is not a
covenant not to compete and is therefore not subject to the requirements of the business
and commerce code. Dr. Dougherty also moved for summary judgment, contending that
the forfeiture clause is a covenant not to compete and that it is unenforceable because it
does not comply with those requirements. The trial court declined to grant either motion
for summary judgment, but it did specifically find that the forfeiture clause constitutes a
covenant not to compete. The case proceeded to trial solely on the issue of whether the
covenant was enforceable.

 After a trial before the bench, the trial court ruled in favor of Dr. Dougherty on
January 31, 2008, finding the forfeiture clause to be unenforceable. The trial court also
awarded $179,870.46 to Dr. Dougherty, representing the withheld deferred compensation
payments and pre-judgment interest, as well as monthly payments of $4,560.06, $20,000
in trial attorney's fees, $20,000 in additional attorney's fees upon appeal to this Court,
$5,000 in additional attorney's fees if a petition for review is filed with the Texas Supreme
Court, and $15,000 in additional attorney's fees if that petition for review is granted.

 On January 31, 2008, VDC filed a "Motion for Reformation" with the trial court,
seeking to have the forfeiture clause reformed in accordance with section 15.51(c) of the
business and commerce code. See id. § 15.51(c). The motion was denied on February
6, 2008. Subsequently, pursuant to VDC's request, the trial court issued written findings
of fact and conclusions of law on February 13, 2008. Among the findings of fact were the
following:

 5. The forfeiture provision specifically denied that the provision
was a covenant not to compete, but that if it should be so
found that it would abide by the provisions of Tex. Bus. &
Comm. Code §15.50(b).


 6. Plaintiff [Dr. Dougherty] did not sign the [Bylaws] or Section 6.4
of the [Bylaws].


 7. There was no consideration for the execution of the covenant
not to compete.


 The trial court's conclusions of law concisely restated the declarations made in the
final judgment and additionally stated that "[r]eformation is not applicable to the covenant
not to compete." VDC filed its notice of appeal on April 18, 2008, and this appeal followed.

II. Discussion

 On appeal, VDC raises eleven issues, each challenging the trial court's central
conclusion that the forfeiture clause contained in VDC's bylaws was unenforceable as a
covenant not to compete.

1. Standard of Review

 Findings of fact in a case tried to the court have the same force and dignity as a
jury's verdict upon questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991). When reviewing facts,

. . . the final test for legal sufficiency must always be whether the evidence
at trial would enable reasonable and fair-minded people to reach the verdict
under review. Whether a reviewing court begins by considering all the
evidence or only the evidence supporting the verdict, legal-sufficiency review
in the proper light must credit favorable evidence if reasonable jurors could,
and disregard contrary evidence unless reasonable jurors could not.


Villagomez v. Rockwood Specialties, Inc., 210 S.W.3d 720, 728 (Tex. App.-Corpus Christi
2006, pet. denied) (quoting City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)). 
When conducting a factual sufficiency review of findings of fact, we may not merely
substitute our opinion for that of the trial court; rather, we must "consider and weigh all of
the evidence and will set aside the verdict only if it is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust." City of Keller, 168
S.W.3d at 826.

 A trial court's conclusions of law may not be reviewed for factual sufficiency and
may be reversed only if they are erroneous as a matter of law. Villagomez, 210 S.W.3d
at 728 (citing Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 547 (Tex. App.-Austin
1999, pet. denied); Hofland v. Fireman's Fund Ins. Co., 907 S.W.2d 597, 599 (Tex.
App.-Corpus Christi 1995, no writ)). We review such conclusions de novo. Id. at 727. 
Incorrect conclusions of law do not require reversal, provided that the controlling findings
of fact support a correct legal theory. Id. at 728 (citing Stable Energy, 999 S.W.2d at 547).

 The enforceability of a covenant not to compete is a question of law for the court. 
Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex. 1994); Powerhouse Prods.
v. Scott, 260 S.W.3d 693, 696 (Tex. App.-Dallas 2008, no pet.). The trial court stated in
its conclusions of law that the forfeiture clause constitutes an unenforceable covenant not
to compete, but it did not explain why it is unenforceable. Accordingly, we will uphold the
trial court's conclusion upon any legal theory supported by the evidence. BMV Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Waggoner v. Morrow, 932
S.W.2d 627, 631 (Tex. App.-Houston [1st Dist.] 1996, no writ).

2. Applicable Law

 Although the provision at issue here is a forfeiture clause and expressly states that
it is not a covenant not to compete, the Texas Supreme Court has analyzed such clauses 
in the same manner as covenants not to compete because they share the same
objective--to restrain a former employee from competing against the employer. See Peat
Marwick Main & Co. v. Hass, 818 S.W.2d 381, 383 (Tex. 1991).

 Covenants not to compete are generally considered restraints of trade and are
disfavored in law. See Tex. Bus. & Com. Code Ann. § 15.05(a) (Vernon Supp. 2008)
("Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.");
see also Travel Masters, Inc. v. Star Tours, Inc., 827 S.W.2d 830, 832 (Tex. 1991). 
However, the Covenants Not to Compete Act (the "CNCA") sets forth certain circumstances
under which such covenants are enforceable. See Tex. Bus. & Com. Code Ann. §§
15.50-.52. The CNCA provides in relevant part that:

 Notwithstanding Section 15.05 of this code, and subject to any
applicable provision of Subsection (b), a covenant not to compete is
enforceable if it is ancillary to or part of an otherwise enforceable agreement
at the time the agreement is made to the extent that it contains limitations as
to time, geographical area, and scope of activity to be restrained that are
reasonable and do not impose a greater restraint than is necessary to protect
the goodwill or other business interest of the promisee.


Id. § 15.50(a).

 Section 15.50(b) of the CNCA provides additional requirements for a covenant not
to compete to be enforceable against a physician licensed by the Texas State Board of
Medical Examiners. Specifically, the statute provides that:

(1) the covenant must:


 (A) not deny the physician access to a list of his patients whom he
had seen or treated within one year of termination of the
contract or employment;


 (B) provide access to medical records of the physician's patients
upon authorization of the patient and any copies of medical
records for a reasonable fee as established by the Texas State
Board of Medical Examiners under Section 159.008,
Occupations Code; and


 (C) provide that any access to a list of patients or to patients'
medical records after termination of the contract or
employment shall not require such list or records to be
provided in a format different than that by which such records
are maintained except by mutual consent of the parties to the
contract;


(2) the covenant must provide for a buy out of the covenant by the
physician at a reasonable price or, at the option of either party, as
determined by a mutually agreed upon arbitrator or, in the case of an
inability to agree, an arbitrator of the court whose decision shall be
binding on the parties; and


(3) the covenant must provide that the physician will not be prohibited
from providing continuing care and treatment to a specific patient or
patients during the course of an acute illness even after the contract
or employment has been terminated.


Id. § 15.50(b). Accordingly, to determine whether there is an enforceable covenant not to
compete in the instant case, we must first examine whether the parties entered into an
"otherwise enforceable agreement" and then decide whether the covenant was "ancillary
to or part of" that agreement at the time the agreement was made. See id. § 15.50(a); see
also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 651 (Tex. 2006)
(holding that a covenant not to compete is not unenforceable under the CNCA solely
because the employer's promise is executory when made). Additionally, because Dr.
Dougherty is a board-licensed physician, the covenant must meet the requirements of
section 15.50(b) if it is to be enforceable. See Tex. Bus. & Com. Code Ann. § 15.50(b). 
Even if the covenant meets all of these requirements, it will be enforceable only to the
extent that it is reasonably restricted as to time, geographical area, and scope of activity. 
See id. § 15.50(a).

3. Analysis

 By its third issue, VDC contends that the forfeiture clause was enforceable because
it was ancillary to or part of an otherwise enforceable agreement at the time the agreement
was made. See id. (3) Specifically, VDC argues that the deferred compensation provision
was supported by sufficient consideration and served as the "otherwise enforceable
agreement" to which the forfeiture clause is ancillary.

 For a covenant to be "ancillary to or part of" an otherwise enforceable agreement,
it must satisfy a two-prong test: "(1) the consideration given by the employer in the
otherwise enforceable agreement must give rise to the employer's interest in restraining
the employee from competing; and (2) the covenant must be designed to enforce the
employee's consideration or return promise in the otherwise enforceable agreement." 
Sheshunoff, 209 S.W.3d at 648-49 (citing Light, 883 S.W.2d at 647).

 Assuming, without deciding, that the deferred compensation clause was in fact an
"otherwise enforceable agreement," we conclude that the forfeiture clause failed to satisfy
the second prong of this test and was therefore not "ancillary to or part of" the deferred
compensation provision. See id. In order to satisfy the second prong, the forfeiture clause
must have been "designed to enforce" Dr. Dougherty's "consideration or return promise"
made in the deferred compensation provision. See id. Here, the only "consideration or
return promise[s]" that Dr. Dougherty could be said to have provided under the deferred
compensation provision were: (1) that he not compete with VDC after departing the
practice, as detailed in the forfeiture provision; or (2) that he continue to practice with VDC. To the extent VDC claims that the consideration for its deferred compensation
promise was a reciprocal promise by Dr. Dougherty not to compete, the forfeiture clause
fails because there would be no otherwise enforceable agreement--that is, there would
be no agreement that is enforceable wholly separate from the covenant not to compete. 
See id. A separate, ancillary agreement that is enforceable in and of itself must be present
in order for a non-compete covenant to be enforceable. See Tex. Bus. & Com. Code Ann.
§ 15.50(a). A compensation provision made only in exchange for a non-compete promise
is precisely the sort of restraint of trade that Texas law prohibits. Cf. Sheshunoff, 209
S.W.3d at 647, 651 (finding an "otherwise enforceable agreement" where employer
promised to disclose confidential information and to provide specialized training under
employment agreement, and employee promised not to disclose employer's confidential
information); Light, 883 S.W.2d at 646 (finding an "otherwise enforceable agreement"
where employer promised to provide training to employee and employee promised to (1)
give 14 days notice before terminating her employment and (2) provide an inventory upon
termination).

 On the other hand, to the extent that VDC claims that the consideration provided by
Dr. Dougherty was his promise to continue practicing with VDC, the forfeiture clause could
not have been designed to enforce that promise. That is because, by its own terms, the
clause was to take effect only after Dr. Dougherty had already departed from the
association. There was no consideration provided by Dr. Dougherty in exchange for the
deferred compensation agreement which we can say the forfeiture clause was designed
to enforce. See Sheshunoff, 209 S.W.3d at 648-49 (citing Light, 883 S.W.2d at 647).

 Because the clause fails the second prong of the test elucidated in Sheshunoff and
Light, it was not "ancillary to or part of" any otherwise enforceable agreement. See Tex.
Bus. & Com. Code Ann. § 15.05(a); Sheshunoff, 209 S.W.3d at 648-49 (citing Light, 883
S.W.2d at 647). Accordingly, the trial court did not err in concluding as a matter of law that
the clause was unenforceable as an unlawful restraint of trade. See Tex. Bus. & Com.
Code Ann. §§ 15.05(a), 15.50(a); BMV Software Belg., N.V., 83 S.W.3d at 794. VDC's
third issue is overruled. (4)

III. Conclusion

 We affirm the judgment of the trial court.


 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed this 

the 12th day of February, 2009.
1. Specifically, VDC alleged that Dr. Dougherty had informed another nephrologist, who was a
candidate for employment at VDC, that "VDC was not supportive of nephrology and would not support [the
candidate] if he accepted employment at VDC as a nephrologist." Dr. Dougherty denies the allegation. 
Because VDC was authorized under the employment agreement to terminate Dr. Dougherty without cause,
this background is immaterial to our analysis.
2. Dr. Dougherty's original petition also named Candice Downing, D.O. and Luis Reynoso, M.D., VDC's
president and medical director at the time the petition was filed, as defendants. The trial court awarded
summary judgment in favor of Drs. Downing and Reynoso on May 24, 2007, and neither party to this appeal
contests that judgment.
3. We note that Dr. Dougherty perceives there to be a significant ambiguity within the forfeiture clause
at issue. See Frost Nat'l Bank v. L & F Distribs., Ltd., 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) ("[A]
contract is ambiguous if it is susceptible to more than one reasonable interpretation."). The clause states that
it applies to "a Member with any degree of seniority separat[ing] from service and practic[ing] medicine during
the next four (4) years . . ." (emphasis added). By a cross-point, Dr. Dougherty asserts that period of time
referred to by "the next four (4) years" commenced with the beginning of his employment at VDC. According
to Dr. Dougherty, because he departed the practice more than four years after he commenced his
employment there, the forfeiture clause is not applicable to him. On the other hand, VDC appears to assert
that the four-year period referred to in the clause commenced instead with Dr. Dougherty's termination of
employment from VDC; thus, the forfeiture clause would have been effective as to Dr. Dougherty until
December 4, 2008, four years after he departed VDC. Because, as detailed herein, we find that the trial court
did not err in concluding that the forfeiture clause is unenforceable, we need not address this perceived
ambiguity.
4. Having concluded that the trial court did not err in ruling that the forfeiture clause is unenforceable
as a matter of law, we need not address VDC's first or second issues contending that: (1) the trial court erred
in finding that no consideration was given by VDC in exchange for the forfeiture clause; and (2) the trial court's
finding that Dr. Dougherty did not sign the bylaws is irrelevant to the enforceability of the forfeiture clause. 
Tex. R. App. P. 47.1.


 Further, we need not address VDC's final eight issues arguing that Dr. Dougherty failed to present
legally or factually sufficient evidence that (1) the forfeiture clause was unreasonably broad in time, distance,
and scope, or (2) that the clause did not comply with the requirements of section 15.50(b), such as the
inclusion of a reasonable buy-out provision. Id.; see Tex. Bus. & Com. Code Ann. § 15.50(b) (Vernon Supp.
2008).