

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-20-00026-CV

TITAN OIL & GAS CONSULTANTS, LLC, Appellant

V.

DAVID W. WILLIS AND RIGUP, INC., Appellees

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2019-979-CCL2

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

## OPINION

Beginning in November 2016, David W. Willis, an independent oil and gas completions consultant, worked for Apache Corporation (Apache) through an assignment by Titan Oil & Gas Consultants, LLC (Titan). After Willis left Titan and continued to work for Apache through another consulting company, RigUp, Inc. (RigUp), Titan instituted this suit to enforce a covenant not to compete contained in its contractor agreement (the Agreement) with Willis. In this appeal,[1] Titan challenges the trial court's grant of summary judgment in favor of Willis and its dismissal of Titan's claims. Because we find no error by the trial court, we affirm the trial court's judgment.

## I.      The Summary Judgment Evidence

Willis has worked in the oil and gas industry in various capacities for thirty-four years. Over the last eight years, he has worked as a completions consultant supervising the completion of oil and gas wells. Completions consultants are independent contractors who provide their services to oil and gas operating companies like Apache, which control how the job is done, the details of the particular drill or production job, the schedules, the specifications of the completions, and the operating and safety procedures. A completions consultant contracts with consulting firms like Titan, which provides administrative services, including insurance and payroll, for the consultants. The consulting firm also contracts with the operating companies to provide those companies with qualified consultants. The operating company may contact the

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Twelfth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

2

consulting firm to propose consulting candidates, or it may contact a consultant directly, who then chooses a consulting firm for insurance and payroll purposes.

Willis first worked for Apache performing drill outs as a tool supervisor through Old School around 2013. During that time, Willis developed relationships with several Apache employees, including Bo Nock and Jamie Sutton. When Old School was purchased by another company, Lanny Avery with Titan approached him to work through Titan. When he went to work for Apache through Titan at that time, he got the title of completions consultant. Willis testified that during the first six months of that stint with Titan and Apache, he received training from Titan. After six months, Willis was fired and went to work for Cimarex as a completions consultant, where he supervised wireline and coil tubing drill-outs and sat in on multiple fracking jobs. Although he worked several times as a fracking consultant, he was never the consultant in charge of the fracking process for Cimarex.

Sometime in 2016, Willis was contacted by Nock, who told him that he was going to be the completions superintendent with Apache in the Permian Basin and that he was putting together a completions team. Nock asked Willis if he would be a part of that team. Because he had been fired from his first stint with Apache, Willis contacted Sutton to make sure she did not have any objections. After Sutton gave approval, Willis was contacted by Avery, who wanted him to work through Titan for the Apache assignment. Willis was then hired by Apache as a completions consultant.

On November 18, 2016, Willis entered into the Agreement with Titan. Under the Agreement, Titan promised to (1) supply Willis with confidential information concerning Titan's

3

customers in need of well-site consulting services, (2) add Willis's name to Titan's approved list of contractors,[2] (3) attempt to place Willis's credentials before certain of its customers and clients,[3] and (4) provide Willis with training and work opportunities. As relevant to this dispute, the Agreement defined "Confidential and Proprietary Information" as

> any matter, material, or item which is not generally known by or available to the public or the industry, and in which [Titan] has a legitimate proprietary interest. For purposes of the Agreement, Confidential and Proprietary includes, but is not limited to, the following:
>
> . . . .
>
> (c)     Information regarding the specific needs of Titan's clients or customers or similar information regarding the subsidiaries, affiliates, successors or assigns of Titan's clients or customers; . . . [and]
>
> . . . .
>
> (e)     Any and all data, specifications, statistics and other information pertaining to the actual, comparative and/or competitive status of TITAN, its clients, or customers or similar information regarding the subsidiaries, affiliates, successors or assigns of Titan's clients or customers . . . .

Willis agreed that during the term of the Agreement, and at any time thereafter, he would not, without Titan's permission:

> (a)     Use Confidential and Proprietary Information or any part of it for or on behalf of [Willis] . . . ,
>
> (b)     Disclose Confidential and Proprietary Information or any part of it to any outside entity, firm, person or corporation;

---

[2]There is no evidence that Titan added Willis to its approved list of contractors.

[3]It is undisputed that Titan did not attempt to put Willis's credentials before any of its customers or clients, except Apache.

4

     (c)     Disclose Confidential and Proprietary Information or any part of it to any person[] unless that person is specifically authorized to receive Confidential and Proprietary Information by Titan, and Titan's management has approved such disclosure.

The Agreement also contained a covenant not to compete that provided,

     (a)     During the term of this Agreement and for a period of three (3) years thereafter, [Willis] shall not accept any assignment with any of Titan's clients (with whom [Willis] worked through Titan) as an employee, independent contractor or as an employee or independent contractor associated with competitors of Titan. This provision shall include said clients, their affiliates or subsidiaries, or successor, or assigns and/or other related parties thereof.

The Agreement provided that Willis was "a service contractor engaged in the business of supplying well site consulting services relative to drilling and/or completion projects on a contract basis and desire[d] to perform work as an independent contractor for Titan from time to time." It also provided that Titan was not obligated to order work from Willis, that Willis was not obligated to accept orders for work from Titan, and that Willis could enter into similar agreements with others. All of the completions consultants who contracted with Titan entered into the same Agreement with Titan. Titan considered all of the consultants independent contractors.

In 2018, Apache created and implemented a qualifications card (QC) program in order to ensure that completion consultants were qualified to supervise a particular completion procedure according to Apache's standards. In this process, either an Apache employee or a qualified completions consultant observed the work of the candidate consultant and certified whether the candidate had demonstrated their knowledge and practical abilities. Apache paid both the qualified completions consultant and the candidate their regular daily rate during this process.

5

Sutton, who helped develop the QC program, testified that Apache chose the trainer consultant based on his qualifications, no matter with which consulting firm he was associated. She testified that the program usually took about four weeks to complete and that it would not be possible for someone with no fracking experience to complete the program in four weeks. She viewed the program as a test to confirm that the candidate was qualified to supervise completions, rather than a training program.

Completions consultants associated with Titan were some of the consultants Apache used to ensure the candidates were capable to supervise an Apache fracking procedure. Julio Macias and Keaton Milhorn were two completions consultants associated with Titan whom Apache asked to qualify Willis to supervise a fracking procedure for Apache. Willis completed the QC program. Part of this process was to communicate details specific to Apache in the fracking procedure. Although Titan generally asserted that it had provided Willis training through several of the completions consultants associated with it, it did not provide any details of such training, other than that it had given Willis access to Apache's data van used for fracking on numerous occasions. Avery acknowledged that Titan had made no expenditures of money or resources in the QC program and that Titan does not have a written training program.

During the QC program, the candidates received Apache's confidential information, and when they were qualified, they maintained access to Apache's confidential information through their own Apache email, Apache's file share program, and via meetings at Apache's offices in Midland. It is undisputed that all of the completions consultants working for Apache received and had access to the same Apache confidential information, regardless with which consulting

firm they were associated. It is also undisputed that the completions consultants received the confidential information directly from Apache and that Titan neither received the information nor was it involved in the process.

Titan's competitors in the Permian Basin were other consulting firms that have completions consultants, such as RigUp, Bedrock, and RWDY. Apache used completions consultants who worked through Titan and its competitors in the Permian Basin, and the completions consultants all had access to and viewed the same information from Apache. Apache shared its confidential information directly with the completions consultants and it did not send the information to Titan or Titan's competitors.

Apache hired the completions consultants based on their qualifications and skill set, not on the particular consulting firm with which they were associated. Consequently, it was common to have consultants from Titan, RigUp, and Bedrock all working on the same fracking job for Apache. Apache wanted and expected the mixed team of completions consultants to access, discuss, and share the confidential information that Apache provided them so that they could work together as a team and complete the particular job for Apache. Titan did not claim any ownership interest in any of Apache's proprietary information.

## II.     Standard of Review

"We review a summary judgment de novo." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was

7

rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). "The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c); *see also Knott*, 128 S.W.3d at 216). "Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment." *Neurodiagnostic Tex., L.L.C. v. Pierce*, 506 S.W.3d 153, 162 (Tex. App.—Tyler 2016, no pet.) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). "[W]hen the trial court's order specifies the grounds on which it granted summary judgment, the summary judgment can be affirmed only on the grounds specified in the trial court's order." *Harvill v. Rogers*, No. 12-09-00442-CV, 2010 WL 2784436, at *3 (Tex. App.—Tyler July 14, 2010, no pet.) (mem. op.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380–81 (Tex. 1993) (plurality op.)). "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented."[4] *Mann Frankfort*, 289 S.W.3d at 848 (citing *Comm'rs Court of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997)).

---

[4]Titan has only appealed the trial court's grant of summary judgment in favor of Willis. It has not appealed, and consequently has not presented any issue regarding, the trial court's denial of Titan's motion for summary judgment. In such a case, we address only the issue presented and either affirm the trial court's grant of summary judgment or reverse and remand to the trial court. *See Copeland v. Tarrant Appraisal Dist.*, 906 S.W.2d 148, 152 (Tex. App.—Fort Worth 1995, writ denied); *Gonzalez v. Webb Cty.*, No. 04-95-00042-CV, 1995 WL 595806, at *1 (Tex. App.—

8

### III. The Covenant Not to Compete Was Not Enforceable

#### A. Applicable Law

Whether a covenant not to compete is enforceable is a question of law. *Pierce*, 506 S.W.3d at 163 (citing *Powerhouse Prods., Inc. v. Scott*, 260 S.W.3d 693, 696 (Tex. App.—Dallas 2008, no pet.); *Gorman v. CCS Midstream Servs., L.L.C.*, No. 12-09-00204-CV, 2011 WL 1642624, at *3 (Tex. App.—Tyler Apr. 29, 2011, no pet.) (mem. op.)). Section 15.50(a) of the Texas Business and Commerce Code provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COMM. CODE ANN. § 15.50(a). In determining whether a covenant not to compete is enforceable, we make two inquiries: "[f]irst, we determine whether there is an 'otherwise enforceable agreement' between the parties, then we determine whether the covenant is 'ancillary to or part of' that agreement." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 771 (Tex. 2011) (citing *Mann Frankfort*, 289 S.W.3d at 849; *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994)). "The 'otherwise enforceable agreement' requirement is satisfied when the covenant is 'part of an agreement that contained mutual non-illusory promises.'" *Id.* at 773 (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 648–49 (Tex. 2006) (quoting *Light*, 883 S.W.2d at 646)).

---

San Antonio Oct. 4, 1995, no writ) (not designated for publication); *Pine v. Salzer*, 824 S.W.2d 779, 780 (Tex. App.—Houston [1st Dist.] 1992, no writ).

To satisfy the second inquiry, i.e., that the covenant not to compete is ancillary to or part of an otherwise enforceable agreement, "the employer must establish both that (a) the consideration given by the employer in the agreement is reasonably related to an interest worthy of protection and (b) the covenant not to compete was designed to enforce the employee's consideration or return promise in the agreement." *Pierce*, 506 S.W.3d at 164 (citing *Marsh*, 354 S.W.3d at 775). "Unless both elements of the test are satisfied, the covenant cannot be ancillary to or a part of an otherwise enforceable agreement, and is therefore a naked restraint of trade and unenforceable." *Light*, 883 S.W.2d at 647. "The covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer." *Pierce*, 506 S.W.3d at 164 (quoting *Sheshunoff*, 209 S.W.3d at 651). "Business goodwill, confidential or proprietary information, trade secrets, customer information, and specialized training are examples of interests that can be, in appropriate circumstances, worthy of protection by a covenant not to compete." *Id.* (citing *Marsh*, 354 S.W.3d at 777; *Sheshunoff*, 209 S.W.3d at 651; *Lazer Spot, Inc. v. Hiring Partners*, 387 S.W.3d 40, 46 (Tex. App.—Texarkana 2012, pet. denied); *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 652 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

## B.     *Light*'s "Designed to Enforce" Requirement Is Binding Precedent

Willis sought, and the trial court granted, summary judgment solely on the basis that the covenant not to compete was not designed to enforce Willis's return promise in the Agreement. In this appeal, Titan asserts the trial court erred by granting summary judgment on this basis. In its initial argument, which consumes the majority of its brief, Titan urges this Court to disregard

10

the express wording of the Texas Supreme Court's precedent in *Light*, that in order to show that the covenant not to compete is ancillary to or part of an otherwise enforceable agreement, it must be established, inter alia, that the covenant not to compete was designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Light*, 883 S.W.2d at 647. Titan argues that we must take this unusual action because the Supreme Court effectively overruled the "designed to enforce" requirement in a subsequent case. We disagree with Titan's interpretation.

> In *Light*, the Texas Supreme Court held that under Section 15.50,
>
> in order for a covenant not to compete to be ancillary to an otherwise enforceable agreement between employer and employee:
>
> (1)    the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and
>
> (2)    the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.
>
> Unless both elements of the test are satisfied, the covenant cannot be ancillary to or a part of an otherwise enforceable agreement, and is therefore a naked restraint of trade and unenforceable.

*Id.* In *Marsh,* the Texas Supreme Court modified, and arguably eliminated, the first, or "give rise," element of *Light*'s test, but it did not address the second, "designed-to-enforce" element. Nevertheless, Titan argues that by virtue of the Supreme Court's reasoning as to the first element, it impliedly eliminated the designed-to-enforce element of *Light*'s test.

There are two reasons why we must consider the second element in *Light* as controlling precedent in this case. First, the Twelfth Court of Appeals, whose precedent we are bound to

11

follow in this transfer case, has treated both the first (although modified by *Marsh*) and second elements of the *Light* test as controlling precedent. *See* TEX. R. APP. P. 41.3 (requiring transferee court of appeals to "decide the case in accordance with the precedent of the transferor court under principles of stare decisis"). In *Pierce*, decided almost five years after *Marsh*, the Tyler Court of Appeals indicated that the holding in *Marsh* had modified the first element of the *Light* test and left the second element intact when it cited *Marsh* as the authority for its statement of law that

> for a covenant not to compete to be "ancillary to or part of" an otherwise enforceable agreement, the employer must establish both that (a) the consideration given by the employer in the agreement is reasonably related to an interest worthy of protection and (b) the covenant not to compete was designed to enforce the employee's consideration or return promise in the agreement.

*Pierce*, 506 S.W.3d at 164 (citing *Marsh*, 354 S.W.3d at 775). The Tyler Court of Appeals went on to analyze the covenant not to compete that was the subject of that case to determine whether both elements were established. *Id.* at 164–66. Since the Tyler Court of Appeals has recognized that *Light*'s second element is still controlling precedent post-*Marsh*, we are bound to decide this case in accordance with that precedent. TEX. R. APP. P. 41.3.

In addition, as Titan acknowledges, *Marsh* did not address the continued viability of *Light*'s second, designed-to-enforce element. Rather, *Marsh* specifically stated that it was addressing only "the first prong of *Light*'s explication of the 'ancillary to or part of' requirement, *i.e.*, whether the Act requires that consideration for covenants not to compete must 'give rise' to the employer's interest in restraining the employee from competing." *Marsh*, 354 S.W.3d at 773 (citing *Light*, 883 S.W.2d at 647). The court also noted,

12

> The second prong of the *Light* test to determine if a covenant not to compete is ancillary to an otherwise enforceable agreement, which requires that the covenant be designed to enforce the employee's promise, is not at issue in this case. *Light*, 883 S.W.2d at 647. However, we re-emphasize that the Act provides for the enforcement of *reasonable* covenants not to compete. TEX. BUS. & COM. CODE § 15.50(a).

*Id.* at 777 n.7. Neither *Marsh* nor any other Texas Supreme Court case that has considered *Light* has overruled *Light*'s designed-to-enforce element of an enforceable covenant not to compete. *See, e.g.*, *id.* at 773, 777 n.7; *Mann Frankfort*, 289 S.W.3d at 849; *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 648–49 (Tex. 2006).

"It is not the function of a court of appeals to abrogate or modify established precedent." *Lubbock Cty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (citing *Stark v. Am. Nat'l Bank of Beaumont*, 100 S.W.2d 208, 212 (Tex. App.—Beaumont 1936, writ ref'd)). Rather, "[t]hat function lies solely with [the Supreme] Court." *Id.* (citing *Lubbock County*, 100 S.W.2d at 212). "Generally, the doctrine of stare decisis dictates that once the Supreme Court announces a proposition of law, the decision is considered binding precedent." *Id.* (citing *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex. 1964)). Consequently, we may not abrogate or modify *Light*'s designed-to-enforce element of an enforceable covenant not to compete and are bound to apply that precedent.

## C.     The Covenant Was Not Designed to Enforce Willis's Return Promise

Titan makes an alternative argument that the covenant not to compete was designed to enforce Willis's return promises. It is undisputed that the only company that Willis worked for during his second stint with Titan was Apache. It is also undisputed that the only confidential information he received during that time was Apache's and that the source of that information

was Apache, not Titan. In addition, it is undisputed that Apache shared the same confidential information with all completions consultants that it retained, regardless of which consulting firm the consultant was associated with. Yet, the covenant not to compete only restricted Willis from working for Apache, whether as an employee, an independent contractor, or through a competitor of Titan, i.e., through another consulting firm.

Nevertheless, Titan argues that the covenant not to compete was designed to enforce Willis's return promise not to disclose Apache's confidential information. Titan reasons that any consulting firm Willis worked through to work at Apache would have other consultants who worked with oil and gas operators other than Apache.[5] Yet, Titan acknowledged that under the covenant not to compete, Willis was free to work for one of the oil and gas operators competing with Apache, whether directly or through another consulting firm. We fail to see how restricting Willis from working for Apache as an employee, independent contractor, or through another consulting firm, yet allowing Willis to work for one of Apache's competitors, is in any way designed to enforce Willis's promise to not disclose Apache's confidential information.

Titan also contends that the covenant not to compete was designed to enforce Willis's return promise to not use Apache's confidential information for Willis's benefit. Titan argues that this was equivalent to a promise to not use Apache's confidential information to compete with Titan by working through another consulting firm. However, Willis did not make a promise not to compete with Titan by working through another consulting firm, outside of the covenant not to compete itself. To the extent Titan relies on this promise, the covenant not to compete is

_____

[5]Titan does not explain why this would be any different than working at Titan, which also has consultants working at other oil and gas operators.

14

unenforceable "because there would be no *otherwise enforceable* agreement—that is, there would be no agreement that is enforceable wholly separate from the covenant not to compete." *Valley Diagnostic Clinic, P.A. v. Dougherty*, 287 S.W.3d 151, 157 (Tex. App.—Corpus Christi 2009, no pet.) (citing *Sheshunoff*, 209 S.W.3d at 648–49); *see* TEX. BUS. & COMM. CODE ANN. § 15.50(a); *Sheshunoff*, 209 S.W.3d at 651 (under Section 15.50, "[t]he covenant cannot be a stand-alone promise from the employee lacking any new consideration from the employer") (citing *Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 669 (Tex. 1990)).

In its statement of facts, Titan asserts that it trained Willis in procedures and processes he needed to consult on fracking and that it gave him access to new confidential information of Apache. To the extent that Titan asserts that this was consideration for Willis's return promise not to use confidential information for his benefit, this argument also fails. As noted above, the only confidential information Willis received was from and through Apache. According to Apache, it did not matter to them with which consulting firm Willis associated himself. In addition, the summary judgment evidence showed that the only training Willis received was through, and at the direction of, Apache. Although Apache may have used other completions consultants who were also associated with Titan as independent contractors, it is undisputed that Apache chose who would observe Willis while he completed the QC program and that Apache paid both Willis and the observing consultant their regular daily rate during that time. Titan's corporate representative acknowledged that it had not expended any money or resources for that training.

This is not a case where in exchange for a promise not to disclose confidential information, the employer expends money and resources to provide the employee with specialized training or the employee gains access to the employer's clients and their confidential information because of the employer's relationship with its clients. *See, e.g.*, *Mann Frankfort*, 289 S.W.3d at 851 (employer provided employee with confidential information of its clients that was necessary to perform his job); *Sheshunoff*, 209 S.W.3d at 647 (undisputed that employer provided employee with confidential information and paid for training); *Pierce*, 506 S.W.3d at 166 (employer "expended well in excess of [employee]'s stated reimbursement amount . . . in conjunction with [employee]'s training). Rather, the undisputed evidence shows that Apache contacted Willis to be a part of its completions team and that Titan subsequently contacted Willis to carry his insurance and administrate payroll while he worked at Apache. Thus, Willis did not gain access to Apache and its confidential information through Titan or because of Titan's relationship with Apache.

Since Titan did not provide any consideration for Willis's promise not to use Apache's confidential information for his benefit, there was no otherwise enforceable agreement. Consequently, the covenant not to compete was not "designed to enforce the employee's consideration or return promise in [an] otherwise enforceable agreement." *Light*, 883 S.W.2d at 647. Therefore, we find that the trial court did not err when it granted Willis's motion for summary judgment. We overrule Titan's sole issue.

16

## IV. Disposition

Having determined that the trial court did not err when it granted Willis's motion for summary judgment, we affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     October 14, 2020
Date Decided:       November 24, 2020