

NUMBER 13-08-00201-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

VALLEY DIAGNOSTIC CLINIC, P.A.,                                    Appellant,

v.

JOSEPH C. DOUGHERTY, M.D.,                                          Appellee.

On appeal from the 107th District Court of Cameron County, Texas.

# O P I N I O N

### Before Justices Rodriguez, Garza, and Benavides
### Opinion by Justice Garza

In this case, we are asked whether a covenant not to compete incorporated into a professional association's bylaws is enforceable. Appellant, Valley Diagnostic Clinic, P.A. ("VDC"), challenges the trial court's judgment in favor of appellee, Joseph C. Dougherty, M.D., contending by eleven issues that the trial court erred in determining that a deferred compensation forfeiture clause contained in VDC's bylaws is unenforceable as a unlawful restraint of trade. We affirm.

## I. BACKGROUND

VDC is a medical clinic established in April 1998 in Harlingen, Texas. Dr. Dougherty, a nephrologist, entered into a "Physician Employment Agreement" with VDC on July 1, 1999, which provided in part that VDC would be entitled to receive all fees

generated by Dr. Dougherty for professional services. In exchange, Dr. Dougherty would receive regular compensation from VDC in the amount of "47.5% of the net collected receivables attributed solely to [Dr. Dougherty's] professional fees," with the exact percentage subject to change annually by VDC's board of directors.

In July 2000, VDC adopted bylaws which included a deferred compensation program for its shareholder physicians. Specifically, section 6.4 of the bylaws provided as follows:

> 6.4 Deferred Compensation. Subject to Section 6.4(c) below, upon the first day of the month following his separation from service, and on the first day of each of the ensuing forty-seven (47) months, each Member shall be entitled to receive a deferred compensation amount determined as follows:
>
> > (a) Existing Members: Those who are Members (shareholders) on November 30, 2001 ("Existing Members") shall be entitled to receive a monthly deferred compensation amount equivalent to his/her share, proportionate to the number of Members (both Existing and New), of 1/48 of:
> >
> > > (1) 90% of the estimated collectible accounts receivable of the Association, as determined by the Association's Executive Director, plus 100% of the Association's Cash,
> > >
> > > less
> > >
> > > (2) the amount of all Association Liabilities, including Association's indebtedness from all sources, accounts payable, and accrued payroll and benefits.
>
> An Existing Member shall also be entitled to receive an additional deferred compensation amount equivalent to his/her share, proportionate to the number of Existing Members, of 1/48 of the fair market value of the Association's Tangible Assets, as determined by a majority of the Members, or by a qualified medical practice appraiser, if agreement cannot be reached.
>
> . . . .
>
> > (c) Restrictions Applicable to Existing Members and New Members: If a Member separates from service within four (4) years of becoming a Member, he/she shall be entitled to receive only a portion of the above-described deferred compensation payments, in accordance with the following schedule:

| Years AS A Member | Percentage of Deferred Compensation Entitlement |
|---|---|
| less than 2 years | 0% |
| 2 years but less than 3 | 50% |
| 3 years but less than 4 | 75% |
| 4 years or more | 100% |

> In addition, if a Member with any degree of seniority separates from service and practices medicine during the next four (4) years, within a 50-mile radius of Harlingen, Texas, such former Member shall forfeit his/her entitlement to any remaining monthly deferred compensation payments from the Association. Such forfeiture shall constitute liquidated damages to reasonably compensate the Association for harm suffered by it due to such former Member's competition. Although this does not represent an express covenant not to compete, the Association nevertheless shall comply with the provisions of § 15.50(b) of the *Texas Business and Commerce Code*; such provisions are hereby incorporated by reference into these Bylaws.

(Emphasis in original.)

On or about August 26, 2004, VDC informed Dr. Dougherty that he had violated certain provisions of his employment agreement.[1] VDC decided to terminate Dr. Dougherty's employment pursuant to a clause in his employment agreement providing that he may be terminated without cause upon ninety days' notice. VDC gave Dr. Dougherty notice of his termination on September 7, 2004, and the termination took effect on December 7, 2004. In December 2004, Dr. Dougherty set up a separate nephrology practice in Harlingen. Subsequently, VDC refused to make monthly deferred compensation payments to Dr. Dougherty, contending that he forfeited his rights to receive those payments under the final paragraph of section 6.4 of the bylaws (the "forfeiture clause").

Dr. Dougherty sued VDC on April 19, 2005, alleging wrongful termination and contending that VDC's refusal to make deferred compensation payments to him amounted

---

[1] Specifically, VDC alleged that Dr. Dougherty had informed another nephrologist, who was a candidate for employment at VDC, that "VDC was not supportive of nephrology and would not support [the candidate] if he accepted employment at VDC as a nephrologist." Dr. Dougherty denies the allegation. Because VDC was authorized under the employment agreement to terminate Dr. Dougherty without cause, this background is immaterial to our analysis.

3

to a breach of contract and breach of fiduciary duty.[2]  Dr. Dougherty later amended his petition, seeking declaratory relief in the form of a judgment stating that the forfeiture clause is an unenforceable covenant not to compete.  *See* TEX. BUS. & COM. CODE ANN. §§ 15.50-.52 (Vernon Supp. 2008) (setting forth criteria for the enforceability of covenants not to compete).  The amended petition requested judgment against VDC for failing to pay Dr. Dougherty's deferred compensation and for attempting to enforce the forfeiture clause, as well as for attorney's fees and interest.

VDC moved for summary judgment, contending that the forfeiture clause is not a covenant not to compete and is therefore not subject to the requirements of the business and commerce code.  Dr. Dougherty also moved for summary judgment, contending that the forfeiture clause is a covenant not to compete and that it is unenforceable because it does not comply with those requirements.  The trial court declined to grant either motion for summary judgment, but it did specifically find that the forfeiture clause constitutes a covenant not to compete.  The case proceeded to trial solely on the issue of whether the covenant was enforceable.

After a trial before the bench, the trial court ruled in favor of Dr. Dougherty on January 31, 2008, finding the forfeiture clause to be unenforceable.  The trial court also awarded $179,870.46 to Dr. Dougherty, representing the withheld deferred compensation payments and pre-judgment interest, as well as monthly payments of $4,560.06, $20,000 in trial attorney's fees, $20,000 in additional attorney's fees upon appeal to this Court, $5,000 in additional attorney's fees if a petition for review is filed with the Texas Supreme Court, and $15,000 in additional attorney's fees if that petition for review is granted.

On January 31, 2008, VDC filed a "Motion for Reformation" with the trial court, seeking to have the forfeiture clause reformed in accordance with section 15.51(c) of the business and commerce code.  *See id.* § 15.51(c).  The motion was denied on February

---

[2] Dr. Dougherty's original petition also named Candice Downing, D.O. and Luis Reynoso, M.D., VDC's president and medical director at the time the petition was filed, as defendants.  The trial court awarded summary judgment in favor of Drs. Downing and Reynoso on May 24, 2007, and neither party to this appeal contests that judgment.

6, 2008. Subsequently, pursuant to VDC's request, the trial court issued written findings of fact and conclusions of law on February 13, 2008. Among the findings of fact were the following:

5. The forfeiture provision specifically denied that the provision was a covenant not to compete, but that if it should be so found that it would abide by the provisions of Tex. Bus. & Comm. Code §15.50(b).

6. Plaintiff [Dr. Dougherty] did not sign the [Bylaws] or Section 6.4 of the [Bylaws].

7. There was no consideration for the execution of the covenant not to compete.

The trial court's conclusions of law concisely restated the declarations made in the final judgment and additionally stated that "[r]eformation is not applicable to the covenant not to compete." VDC filed its notice of appeal on April 18, 2008, and this appeal followed.

## II. DISCUSSION

On appeal, VDC raises eleven issues, each challenging the trial court's central conclusion that the forfeiture clause contained in VDC's bylaws was unenforceable as a covenant not to compete.

## 1. Standard of Review

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When reviewing facts,

. . . the final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.

*Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 728 (Tex. App.–Corpus Christi 2006, pet. denied) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). When conducting a factual sufficiency review of findings of fact, we may not merely substitute our opinion for that of the trial court; rather, we must "consider and weigh all of the evidence and will set aside the verdict only if it is so against the great weight and

5

preponderance of the evidence that it is clearly wrong and unjust." *City of Keller*, 168 S.W.3d at 826.

A trial court's conclusions of law may not be reviewed for factual sufficiency and may be reversed only if they are erroneous as a matter of law. *Villagomez*, 210 S.W.3d at 728 (citing *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.–Austin 1999, pet. denied); *Hofland v. Fireman's Fund Ins. Co.*, 907 S.W.2d 597, 599 (Tex. App.–Corpus Christi 1995, no writ)). We review such conclusions de novo. *Id.* at 727. Incorrect conclusions of law do not require reversal, provided that the controlling findings of fact support a correct legal theory. *Id.* at 728 (citing *Stable Energy*, 999 S.W.2d at 547).

The enforceability of a covenant not to compete is a question of law for the court. *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 644 (Tex. 1994); *Powerhouse Prods. v. Scott*, 260 S.W.3d 693, 696 (Tex. App.–Dallas 2008, no pet.). The trial court stated in its conclusions of law that the forfeiture clause constitutes an unenforceable covenant not to compete, but it did not explain why it is unenforceable. Accordingly, we will uphold the trial court's conclusion upon any legal theory supported by the evidence. *BMV Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.–Houston [1st Dist.] 1996, no writ).

## 2. Applicable Law

Although the provision at issue here is a forfeiture clause and expressly states that it is not a covenant not to compete, the Texas Supreme Court has analyzed such clauses in the same manner as covenants not to compete because they share the same objective—to restrain a former employee from competing against the employer. *See Peat Marwick Main & Co. v. Hass*, 818 S.W.2d 381, 383 (Tex. 1991).

Covenants not to compete are generally considered restraints of trade and are disfavored in law. *See* TEX. BUS. & COM. CODE ANN. § 15.05(a) (Vernon Supp. 2008) ("Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful."); *see also Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 832 (Tex. 1991). However, the Covenants Not to Compete Act (the "CNCA") sets forth certain circumstances

under which such covenants are enforceable. *See* TEX. BUS. & COM. CODE ANN. §§ 15.50-.52. The CNCA provides in relevant part that:

> Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b), a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

*Id.* § 15.50(a).

Section 15.50(b) of the CNCA provides additional requirements for a covenant not to compete to be enforceable against a physician licensed by the Texas State Board of Medical Examiners. Specifically, the statute provides that:

(1) the covenant must:

    (A) not deny the physician access to a list of his patients whom he had seen or treated within one year of termination of the contract or employment;

    (B) provide access to medical records of the physician's patients upon authorization of the patient and any copies of medical records for a reasonable fee as established by the Texas State Board of Medical Examiners under Section 159.008, Occupations Code; and

    (C) provide that any access to a list of patients or to patients' medical records after termination of the contract or employment shall not require such list or records to be provided in a format different than that by which such records are maintained except by mutual consent of the parties to the contract;

(2) the covenant must provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties; and

(3) the covenant must provide that the physician will not be prohibited from providing continuing care and treatment to a specific patient or patients during the course of an acute illness even after the contract or employment has been terminated.

*Id.* § 15.50(b). Accordingly, to determine whether there is an enforceable covenant not to compete in the instant case, we must first examine whether the parties entered into an

"otherwise enforceable agreement" and then decide whether the covenant was "ancillary to or part of" that agreement at the time the agreement was made. *See id.* § 15.50(a); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) (holding that a covenant not to compete is not unenforceable under the CNCA solely because the employer's promise is executory when made). Additionally, because Dr. Dougherty is a board-licensed physician, the covenant must meet the requirements of section 15.50(b) if it is to be enforceable. *See* TEX. BUS. & COM. CODE ANN. § 15.50(b). Even if the covenant meets all of these requirements, it will be enforceable only to the extent that it is reasonably restricted as to time, geographical area, and scope of activity. *See id.* § 15.50(a).

### 3. Analysis

By its third issue, VDC contends that the forfeiture clause was enforceable because it was ancillary to or part of an otherwise enforceable agreement at the time the agreement was made. *See id.*[3] Specifically, VDC argues that the deferred compensation provision was supported by sufficient consideration and served as the "otherwise enforceable agreement" to which the forfeiture clause is ancillary.

For a covenant to be "ancillary to or part of" an otherwise enforceable agreement, it must satisfy a two-prong test: "(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement."

---

[3] We note that Dr. Dougherty perceives there to be a significant ambiguity within the forfeiture clause at issue. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) ("[A] contract is ambiguous if it is susceptible to more than one reasonable interpretation."). The clause states that it applies to "a Member with any degree of seniority separat[ing] from service and practic[ing] medicine *during the next four (4) years . . .*" (emphasis added). By a cross-point, Dr. Dougherty asserts that period of time referred to by "the next four (4) years" commenced with the beginning of his employment at VDC. According to Dr. Dougherty, because he departed the practice more than four years after he commenced his employment there, the forfeiture clause is not applicable to him. On the other hand, VDC appears to assert that the four-year period referred to in the clause commenced instead with Dr. Dougherty's termination of employment from VDC; thus, the forfeiture clause would have been effective as to Dr. Dougherty until December 4, 2008, four years after he departed VDC. Because, as detailed herein, we find that the trial court did not err in concluding that the forfeiture clause is unenforceable, we need not address this perceived ambiguity.

8

*Sheshunoff*, 209 S.W.3d at 648-49 (citing *Light*, 883 S.W.2d at 647).

Assuming, without deciding, that the deferred compensation clause was in fact an "otherwise enforceable agreement," we conclude that the forfeiture clause failed to satisfy the second prong of this test and was therefore not "ancillary to or part of" the deferred compensation provision. *See id.* In order to satisfy the second prong, the forfeiture clause must have been "designed to enforce" Dr. Dougherty's "consideration or return promise" made in the deferred compensation provision. *See id.* Here, the only "consideration or return promise[s]" that Dr. Dougherty could be said to have provided under the deferred compensation provision were: (1) that he not compete with VDC after departing the practice, as detailed in the forfeiture provision; or (2) that he continue to practice with VDC.

To the extent VDC claims that the consideration for its deferred compensation promise was a reciprocal promise by Dr. Dougherty not to compete, the forfeiture clause fails because there would be no *otherwise enforceable* agreement—that is, there would be no agreement that is enforceable wholly separate from the covenant not to compete. *See id.* A separate, ancillary agreement that is enforceable in and of itself must be present in order for a non-compete covenant to be enforceable. *See* TEX. BUS. & COM. CODE ANN. § 15.50(a). A compensation provision made only in exchange for a non-compete promise is precisely the sort of restraint of trade that Texas law prohibits. *Cf. Sheshunoff*, 209 S.W.3d at 647, 651 (finding an "otherwise enforceable agreement" where employer promised to disclose confidential information and to provide specialized training under employment agreement, and employee promised not to disclose employer's confidential information); *Light*, 883 S.W.2d at 646 (finding an "otherwise enforceable agreement" where employer promised to provide training to employee and employee promised to (1) give 14 days notice before terminating her employment and (2) provide an inventory upon termination).

On the other hand, to the extent that VDC claims that the consideration provided by Dr. Dougherty was his promise to continue practicing with VDC, the forfeiture clause could

9

not have been designed to enforce that promise. That is because, by its own terms, the clause was to take effect only after Dr. Dougherty had already departed from the association. There was no consideration provided by Dr. Dougherty in exchange for the deferred compensation agreement which we can say the forfeiture clause was designed to enforce. *See Sheshunoff*, 209 S.W.3d at 648-49 (citing *Light*, 883 S.W.2d at 647).

Because the clause fails the second prong of the test elucidated in *Sheshunoff* and *Light*, it was not "ancillary to or part of" any otherwise enforceable agreement. *See* TEX. BUS. & COM. CODE ANN. § 15.05(a); *Sheshunoff*, 209 S.W.3d at 648-49 (citing *Light*, 883 S.W.2d at 647). Accordingly, the trial court did not err in concluding as a matter of law that the clause was unenforceable as an unlawful restraint of trade. *See* TEX. BUS. & COM. CODE ANN. §§ 15.05(a), 15.50(a); *BMV Software Belg., N.V.*, 83 S.W.3d at 794. VDC's third issue is overruled.[4]

### III. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed this
the 12th day of February, 2009.

---

[4] Having concluded that the trial court did not err in ruling that the forfeiture clause is unenforceable as a matter of law, we need not address VDC's first or second issues contending that: (1) the trial court erred in finding that no consideration was given by VDC in exchange for the forfeiture clause; and (2) the trial court's finding that Dr. Dougherty did not sign the bylaws is irrelevant to the enforceability of the forfeiture clause. TEX. R. APP. P. 47.1.

Further, we need not address VDC's final eight issues arguing that Dr. Dougherty failed to present legally or factually sufficient evidence that (1) the forfeiture clause was unreasonably broad in time, distance, and scope, or (2) that the clause did not comply with the requirements of section 15.50(b), such as the inclusion of a reasonable buy-out provision. *Id.*; *see* TEX. BUS. & COM. CODE ANN. § 15.50(b) (Vernon Supp. 2008).