

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00072-CV
_____

BIOTE MEDICAL, LLC, Appellant

V.

JOHN CARROZZELLA, MD, AND JCMD MEDICAL SERVICES, INC.,
Appellees[1]

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-316952-20

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

---

[1]Dan and Terri DeNeui were parties below, but the trial court entered an agreed order dismissing with prejudice all claims asserted by or against them, and the DeNeuis are not parties to this appeal.

## MEMORANDUM OPINION

The principal issue in this case is whether the parties' contractual "residual benefit" clause—a clause that requires Appellee JCMD Medical Services, Inc. to pay a post-termination fee if it uses a treatment method that competes with the one licensed and supported by Appellant BioTE Medical, LLC—is a covenant not to compete governed by Texas's Covenants Not to Compete Act.[2] *See* Tex. Bus. & Com. Code Ann. §§ 15.50–.52. Because we hold that it is not a noncompete, and because we cannot override the Legislature's policy judgment by invalidating the clause on uncodified public policy grounds, we will reverse.

## I. Background

The contract at issue relates to a specific form of bioidentical hormone replacement therapy (BHRT). A nonparty, BioTE Holding, LLC, created a method of pellet-based BHRT (the BioTE Method) in which a physician inserts a uniquely formulated pellet into his patient using the BioTE Method's dosage guidelines.[3]

---

[2]Although the Covenants Not to Compete Act does not bear this formal subtitle, the Subchapter containing its provisions—Subchapter E within Chapter 15 of the Business and Commerce Code—is entitled "Covenants Not to Compete," and the Texas Supreme Court has repeatedly referred to it as the Covenants Not to Compete Act. *See* Tex. Bus. & Com. Code Ann. §§ 15.50–.52; *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 327–29 (Tex. 2014); *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 301–03 (Tex. 2009); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 646, 648–55 (Tex. 2006); *Gage Van Horn & Assocs., Inc. v. Tatom*, 87 S.W.3d 536, 536 (Tex. 2002).

[3]*See BioTE Med., LLC v. Jacobsen*, No. 4:18-CV-866, 2020 WL 2851148, at *1 (E.D. Tex. June 1, 2020) (mem. op. and order) (describing BioTE Medical, LLC's

Although BioTE Holding has exclusive ownership of the BioTE Method, it gave a related entity—BioTE Medical—the right to license the intellectual property rights, to train medical providers on the BioTE Method, and to provide medical providers with related support services—advertising, software, and the like.

One of BioTE Medical's former customers is JCMD Medical Services, the medical practice of Dr. John Carrozzella (together, JCMD). BioTE Medical entered into a series of contracts with JCMD,[4] including licensing JCMD to use its online software, licensing JCMD to use its intellectual property, binding JCMD to a general nondisclosure, making arrangements for the protection of private health information, and agreeing to provide JCMD with a range of training and support services related to the BioTE Method.[5] This last agreement—the Services Agreement—is at the heart of this appeal.

The Services Agreement requires JCMD to, among other things, pay BioTE Medical a fee if JCMD "uses [an] alternative or competing pellet-based bio-identical hormone therapy or treatment following termination of the Agreement." The fee is

business); *Forget About It, Inc. v. BioTE Med., LLC*, 585 S.W.3d 59, 62 (Tex. App.—Dallas 2019, pet. denied) (similar).

[4]Some portions of the agreement were signed by Dr. Carrozzella individually while other portions were signed by him only on behalf of JCMD Medical Services.

[5]Dr. Carrozzella later averred that he "was well experienced in pellet therapy, [so] all [he] really needed was a vendor relationship," so he viewed BioTE Medical merely as "a company that sold [him] pellets." Nonetheless, JCMD's contracts hired BioTE Medical to provide services as well.

explained in the Services Agreement as compensation for the post-termination "continued positive benefit . . . (the 'Residual Benefit')" of JCMD's prior "affiliation with [BioTE Medical], the provision of Services, use of [BioTE Medical's] Intellectual Property, and the use of the [BioTE] Therapy/Method."[6]

When JCMD found a competitor BHRT that it concluded was better for its patients, it stopped using the BioTE Method, it terminated its Services Agreement with BioTE Medical, and it notified BioTE Medical that it considered the residual-benefit clause to be unenforceable. JCMD then began using another BHRT, but it did not pay the residual-benefit fee.

BioTE Medical, in turn, sued JCMD for breach of the Services Agreement (among other claims). JCMD moved for partial traditional summary judgment on that

---

[6]The residual-benefit clause states, in relevant part:

The Practice [i.e., JCMD] acknowledges and recognizes that its . . . use of the Therapy/Method will result in a continued positive benefit . . . after the Practice and its Practitioners cease using the Therapy/Method and other Company Services (the "Residual Benefit"). The Practice also acknowledges and recognizes that as a result of this Residual Benefit, the Company is owed additional compensation in the event the Practice chooses to offer a similar or competing pellet[-]based bio-identical hormone therapy or treatment to its Patients following termination of this Agreement. Therefore, if the Practice uses such alternative or competing pellet-based bio-identical hormone therapy or treatment following termination of the Agreement, the Practice agrees to compensate the Company for the Residual Benefit in an amount equal to the greater of: (a) $2000—the minimum Residual Benefit Fee, or (b) the actual calculated best consecutive 3 months average Management Fee previously paid to BioTE during the previous 12 month period. Such Residual Benefit fees are payable on the first (1st) day of each month for a total of twelve (12) months.

4

claim, arguing that the residual-benefit clause was unenforceable because it (1) was a covenant not to compete that did not satisfy the statutory requirements for noncompetes in the Covenants Not to Compete Act; and (2) was a violation of public policy. The trial court granted JCMD's motion without specifying the basis for its judgment.[7] The order became final when all other parties and claims were dismissed.[8]

BioTE Medical appeals and challenges the summary judgment.

## II. Standard of Review

We review a summary judgment de novo. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to the nonmovant—BioTE Medical—crediting evidence favorable to the nonmovant if reasonable jurors could, disregarding evidence contrary to the nonmovant unless reasonable jurors could not, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Mann Frankfort Stein*, 289 S.W.3d at 848; *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). The party moving for traditional

---

[7]The trial court later granted permission to file a permissive interlocutory appeal of the partial summary judgment, and when it did so, it vacated its original summary judgment order and entered a new summary judgment order. *See BioTE Med., LLC v. Carrozzella*, No. 02-21-00272-CV, 2021 WL 4205000, at \*1 (Tex. App.—Fort Worth Sept. 16, 2021, no pet.) (per curiam) (mem. op.) (denying permissive appeal).

[8]BioTE Medical also sued Dan and Terri DeNeui, but it ultimately settled with the DeNeuis, and the claims asserted by or against them were dismissed by agreement. After the trial court granted JCMD partial summary judgment on BioTE Medical's contract claim, all other claims were nonsuited.

summary judgment—JCMD—bears the burden to show that no genuine issue of material fact exists and that it was entitled to judgment as a matter of law. *Mann Frankfort Stein*, 289 S.W.3d at 848; *see* Tex. R. Civ. P. 166a(b), (c).

Because JCMD sought to conclusively establish the illegality of the residual-benefit clause based on two separate legal theories,[9] and because the trial court did not specify a basis for its judgment, the judgment will be affirmed if either of JCMD's theories is meritorious. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

## III. Discussion

BioTE Medical argues that neither theory is meritorious. It claims the residual-benefit clause is not a noncompete so the validity of the clause is not governed by the Covenants Not to Compete Act. Nor, BioTE Medical contends, is the clause invalid as a violation of public policy. We agree.

### A. Not a Noncompete

The primary issue raised by the parties—both below and on appeal—is whether the residual-benefit clause is a covenant not to compete.

#### 1. Law on Noncompetes

The Covenants Not to Compete Act is situated within a larger framework of statutes related to contractual restraints on trade. *See* Tex. Bus. & Com. Code Ann.

---

[9]Illegality is an affirmative defense. Tex. R. Civ. P. 94 (listing illegality as affirmative defense); *Phila. Indem. Ins. Co. v. White*, 490 S.W.3d 468, 485 (Tex. 2016).

ch. 15. Chapter 15 of the Business and Commerce Code establishes the general rule that a contract provision is unlawful if it is an unreasonable restraint on trade or commerce. *Id.* § 15.05(a). If the contract provision is a covenant not to compete, though, the Covenants Not to Compete Act applies and carves out specific rules and requirements. *See id.* §§ 15.50–.52. The nature of those requirements is irrelevant here; the issue is not whether the residual-benefit clause complies with the Covenants Not to Compete Act but whether it is required to do so, i.e., whether it is a covenant not to compete.

What qualifies as a covenant not to compete is not always a simple question. The Act does not define the term, and the Texas Supreme Court has avoided giving a strict definition. *Exxon Mobil*, 452 S.W.3d at 327–29 (noting that the court enunciated a "general definition" in *Marsh USA*, 354 S.W.3d at 768, but declining to "answer the question of what it means to be a covenant not to compete"); *see Marsh USA*, 354 S.W.3d at 768 (stating that, generally, "[c]ovenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act"). Because the term is undefined, we construe it de novo according to its plain, ordinary meaning. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015); *Marsh USA*, 354 S.W.3d at 768.

When determining whether a given contract provision is within the plain meaning of a covenant not to compete, the Texas Supreme Court has "[l]ook[ed] at

7

the facts in [its] prior non-compete cases" to determine if the contract provision at issue "fit[s] the mold." *Exxon Mobil*, 452 S.W.3d at 327.

## 2. Not a Noncompete

The residual-benefit clause here does not "fit the mold" of noncompetes in prior cases. *See id.* Although that "mold" is admittedly amorphous, *see id.* at 327–29, it lacks the one thing that is common among all other noncompetes, i.e., a limit on the restrained party's ability to—as the name implies—compete.

In the business context, competing generally refers to two or more rivals engaging in similar forms of business in the same market. *See Competition*, Webster's Third New International Dictionary Unabridged 464 (reprt. 2021) (1961) (defining competition as, among other things, "a common struggle for the same object" and "a market condition in which a large number of independent buyers and sellers compete for identical commodities"); *Competitor*, Webster's Third New International Dictionary Unabridged 464 (reprt. 2021) (1961) (defining competitor as, among other things, "rival" and "one that is engaged in selling or buying goods or services in the same market as another"); *see also Compete*, Webster's Third New International Dictionary Unabridged 463 (reprt. 2021) (1961) (defining compete as, among other things, "to come into rivalry esp. in economic value, usefulness, or efficiency" and "to seek or strive for something . . . for which others are also contending"); *Covenant Not to Compete*, Black's Law Dictionary (11th ed. 2019) (defining covenant not to compete as "[a] promise, usu[ally] in a sale-of-business, partnership, or employment contract, not

8

to engage in the same type of business for a stated time in the same market as the buyer, partner, or employer").

For the last three decades,[10] every Texas Supreme Court case applying the Covenants Not to Compete Act has involved a contract provision that restrained one party from competing with the other—not just from buying or using the other's competitor's product or service.[11]  JCMD has not identified any cases that deviate from this norm.[12]

---

[10]The Covenants Not to Compete Act took effect almost 34 years ago.  *See* Act of May 23, 1989, 71st Leg., R.S., ch. 1193, § 1, 1989 Tex. Gen. Laws 4852, 4852–53 (S.B. 946, effective Aug. 28, 1989).

[11]*See Exxon Mobil*, 452 S.W.3d at 327–29 (reviewing case in which Exxon employee resigned and accepted employment at another energy company and Exxon claimed that doing so forfeited restricted stock awards; holding forfeiture provision was not noncompete); *Marsh USA*, 354 S.W.3d at 766–80 (reviewing case in which former employee was prohibited from soliciting or accepting business from employer's clients but when employee resigned he began working for "a direct competitor"; rejecting employee's arguments that noncompete was unenforceable); *Mann Frankfort Stein*, 289 S.W.3d at 845–52 (reviewing case in which accounting firm's agreement with employee–accountant required accountant to pay penalty for providing post-termination accounting services to firm's clients; holding noncompete enforceable); *Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 646–57 (reviewing case in which former employee agreed not to compete with employer or solicit employer's clients and then after participating in employer's plans to offer new banking product, employee left to work for the "market leader" in such products; holding noncompete reasonable); *Light v. Centel Cellular Co. of Tex.*, 883 S.W.2d 642, 643–48 (Tex. 1994) (reviewing case in which former employee sued former employer to be released from noncompete; holding noncompete unenforceable as not ancillary to enforceable agreement), *abrogated by Marsh USA*, 354 S.W.3d at 773–80; *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 831–33 (Tex. 1991) (reviewing case in which travel agent agreed not to engage in similar business serving employer's customers then began working for another travel agency; holding noncompete unenforceable as not ancillary to enforceable agreement), *superseded by statute*, Tex. Bus. & Com. Code Ann.

9

§§ 15.51(b), .52; *see also Tex. Disposal Sys., Inc. v. Perez*, 80 S.W.3d 593, 593–94 (Tex. 2002) (holding lower court's opinion was incomplete in case involving former employee who was enjoined from competing with employer); *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 146–48 (Tex. 1997) (reviewing damages issue in case in which former employee agreed not to compete with two-way radio business then left and began selling two-way radios); *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 383–88 (Tex. 1991) (reviewing case in which accountant left and started new accounting firm after agreeing to pay certain fees if he left firm and took clients; applying common law and holding provision governed by same reasonableness principles as noncompetes); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 675–76, 681–85, 689 (Tex. 1990) (op. on reh'g) (reviewing case in which employee for security-guard company agreed not to compete with employer in any way then resigned and invested in security electronics company soliciting business from former employer's clients; applying common law and holding noncompete unenforceable); *Martin v. Credit Prot. Ass'n, Inc.*, 793 S.W.2d 667, 668–70 & n.1 (Tex. 1990) (op. on reh'g) (reviewing case in which former employee for collection service agreed not to compete with service then resigned and started new collection service; applying common law but noting that Covenants Not to Compete Act would yield same result; holding noncompete unenforceable as not ancillary to enforceable agreement).

[12]Moreover, for the last 30 years, every Texas Supreme Court case applying the Covenants Not to Compete Act has involved a contract provision that "limit[ed] [a] former employees' professional mobility or restrict[ed] the[] solicitation of [a] former employers' customers and employees." *Marsh USA*, 354 S.W.3d at 768 (describing noncompetes); *see Exxon Mobil*, 452 S.W.3d at 322–23, 327 (former employee); *Marsh USA*, 354 S.W.3d at 766–78 (former employee); *Mann Frankfort Stein*, 289 S.W.3d at 845 (former employee); *Alex Sheshunoff Mgmt. Servs.*, 209 S.W.3d at 646–47 (former employee); *Light*, 883 S.W.2d at 643 (former employee); *Travel Masters*, 827 S.W.2d at 831–32 (former employee); *see also Tex. Disposal Sys.*, 80 S.W.3d at 593–94 (former employee); *United Mobile Networks*, 939 S.W.2d at 147 (former employee); *Peat Marwick Main*, 818 S.W.2d at 383–85 (former accountant at accounting firm); *DeSantis*, 793 S.W.2d at 675 (former employee); *Martin*, 793 S.W.2d at 668 (former employee); *Covenant Not to Compete*, Black's Law Dictionary (11th ed. 2019) (defining "covenant not to compete" and noting that such covenants are "usu[ally] in a sale-of-business, partnership, or employment contract"). But there is no evidence that BioTE Medical and JCMD had an employer–employee relationship.

Other cases have occasionally encountered noncompete provisions in contracts between parties engaged in the sale of a business, but that is not the situation here either. *See Ortega v. Abel*, 562 S.W.3d 604, 607–13 (Tex. App.—Houston [1st Dist.]

The residual-benefit clause here does not restrict JCMD's ability to compete with BioTE Medical. BioTE Medical licenses the BioTE Method and provides, in the words of the Services Agreement, "train[ing] and support [for] medical groups and individuals in the use of the [BioTE BHRT] Therapy/Method." JCMD is not "engaged in selling or buying goods or services in th[is] same market," *Competitor*, Webster's Third New International Dictionary Unabridged 464 (reprt. 2021) (1961). It does not license a BHRT method nor does it offer BHRT training or support services to other medical providers. And even if JCMD did offer such products or services, such activity would not trigger the residual-benefit clause's fee.[13] To trigger

2018, pet. denied) (business sale); *Heritage Operating, L.P. v. Rhine Bros., LLC*, No. 02-10-00474-CV, 2012 WL 2344864, at *1–6 (Tex. App.—Fort Worth June 21, 2012, no pet.) (mem. op.) (business sale); *see also Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168, 170 (Tex. 1987) (listing "two general varieties of covenants not to compete: covenants specifying that the seller of a business will not compete with the buyer, and covenants specifying that an employee, upon discharge, will not compete with the former employer" (internal citations omitted)), *superseded by statute*, Tex. Bus. & Com. Code Ann. § 15.50(a); *Covenant Not to Compete*, Black's Law Dictionary (11th ed. 2019) (recognizing that noncompetes sometimes appear in contracts for the sale of a business).

Uncommon circumstances are not decisive of course, but in this case, they are a symptom of the more fundamental problem: JCMD is BioTE Medical's customer rather than its competitor, and the residual-benefit clause restricts JCMD's activity in light of that relationship. *Cf. Ehler v. B.T. Suppenas Ltd.*, 74 S.W.3d 515, 520–21 (Tex. App.—Amarillo 2002, pet. denied) (holding that deed restrictions were not covenants not to compete, recognizing lack of case law applying Covenants Not to Compete Act to restrictions on the use of real property, and noting that noncompetes are "almost exclusively in the context of employment contracts").

[13]Another provision in the Services Agreement, in contrast to the residual-benefit clause, does in fact restrain JCMD's competition with BioTE Medical:

the fee, JCMD must *use* a BHRT product that competes with the BHRT product BioTE Medical sublicenses and supports. Using a competitor's product does not make one a competitor.[14] *See Competitor*, Webster's Third New International

---

> [T]he Practice [i.e., JCMD] agrees . . . that for a period of two (2) years following termination for any reason whatsoever, the Practice and its Practitioners will refrain from, directly or indirectly, owning . . . , managing, operating, controlling, or otherwise associating with or maintaining any interest whatsoever in any enterprise having to do with the provision, distribution, promotion, or advertising of any type of management or services or products to third parties in competition with the Company [i.e., BioTE Medical] in the states in which the Company does business; and/or offering any type of collective Service(s) to third parties similar to those offered by the Company in the states in which the Company does business.

JCMD notes that the residual-benefit clause is "sandwiched between" the above-quoted provision and a nonsolicitation clause, and it argues that such placement indicates that the residual-benefit clause is a covenant not to compete. But the proximity of one contract clause to another does not make them the same in substance. To the contrary, we must "consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). Giving effect to all three contract provisions—the provision quoted above, the nonsolicitation clause, and the residual-benefit clause—requires recognition that they restrain different activities.

[14]JCMD argues that it is effectively competing with BioTE Medical because "at the end of the day, both are ultimately striving after the same patients"—if a patient obtains BHRT from a physician and the physician is "aligned with BioTE Medical, both the physician and BioTE Medical make money," but if the physician "is not aligned with BioTE Medical, the physician makes money, but BioTE Medical does not." But the same could be said of any business that incorporates other products or costs into its sales. A painting company that uses paint from Sherwin-Williams makes money for both itself and Sherwin-Williams, but it does not become Sherwin-Williams's competitor by switching to Benjamin Moore paint. Nor does a law firm that uses Westlaw's legal-research database become Westlaw's competitor by

Dictionary Unabridged 464 (reprt. 2021) (1961) (defining competitor as, among other things, "one that is engaged in selling or buying goods or services in the same market as another"); *see also Covenant Not to Compete*, Black's Law Dictionary (11th ed. 2019) (defining covenant not to compete as "[a] promise . . . not to engage in the same type of business . . . as the [protected party]").

Because the residual-benefit clause does not restrain JCMD from competing with BioTE Medical, it does not "fit the mold" of noncompetes. *See Exxon Mobil*, 452 S.W.3d at 327. Therefore, it is not subject to the Covenants Not to Compete Act's requirements.[15] *See* Tex. Bus. & Com. Code Ann. §§ 15.50–.52. This theory could not form the basis for summary judgment on JCMD's behalf.

## B.  Not Shown to Violate Public Policy

But JCMD also argues that the trial court could have granted summary judgment on public policy grounds. JCMD claims that Texas public policy disfavors

---

switching to LexisNexis. The entity pairs are aligned vertically—not horizontally—in the chain of distribution.

[15]Citing *Valley Diagnostic Clinic, P.A. v. Dougherty*, 287 S.W.3d 151 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.), JCMD argues that the Covenants Not to Compete Act's standards extend to provisions that look and act like noncompetes by inhibiting competition. But the issue is immaterial because the residual-benefit clause does not look or act like a noncompete; it is not triggered by JCMD's competing with BioTE Medical but by JCMD's using a competitor's product or service. *Valley Diagnostic*, meanwhile, involved a former employee who opened a business of the same type in the same geographic area—a classic noncompete situation. *See id.* at 152–54 (describing how nephrologist who was terminated from his professional association opened a competing nephrology practice in the same area).

restraints on professional services and that the residual-benefit clause negatively impacts the quality and price of the medical care that JCMD can provide. So even without a showing that the clause violates a statutory provision, JCMD urges us to invalidate it as contrary to uncodified public policy. But the Legislature has spoken on this policy issue, and we are not at liberty to override a legislative policy determination. *See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 504 (Tex. 2015).

"The Legislature determines public policy through the statutes it passes." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 665 (Tex. 2008). And although Texas public policy disfavors unreasonable restraints on trade, *see* Tex. Bus. & Com. Code Ann. § 15.05, it also "strongly favors freedom of contract," *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017); *see* Tex. Const. art. I, § 16 (protecting freedom of contract); *Atmos Energy Corp. v. Paul*, 598 S.W.3d 431, 445 (Tex. App.—Fort Worth 2020, no pet.). The Legislature balanced these competing policy interests by imposing certain statutory limitations on the freedom of contract if the contract restrains trade. *See* Tex. Bus. & Com. Code Ann. ch. 15; *cf. Phila. Indem. Ins.*, 490 S.W.3d at 471 (noting similarly regarding Property Code's restrictions on residential leases). When, as here, "the Legislature has addressed a matter, . . . we are constrained to defer to that expression of policy." *Royston*, 467 S.W.3d at 504 (deferring to Legislature's policy determination regarding enforceability of arbitration

14

provision and declining to invalidate it on public policy grounds). It is not within our prerogative to expand on that policy.

JCMD does not allege that the residual-benefit clause violates any statutory provisions or standards (apart from the Covenants Not to Compete Act, which we have already held does not apply).[16] Nor does JCMD allege that the residual-benefit clause cannot be performed without JCMD violating the law. *See Phila. Indem. Ins.*, 490 S.W.3d at 483 ("'A contract to do a thing which cannot be performed without violation of the law' violates public policy and is void." (quoting *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding) (op. on reh'g)). Rather, JCMD argues that the residual-benefit clause is, in essence, a bad deal for medical providers and their patients.

But "[t]empting as it is for courts to make policies that protect consumers, our role is much more circumscribed[;] [w]e must interpret the law fairly and defer to the

_____

[16]Although JCMD's motion for summary judgment cited other statutory references to restraints on professional services—including the reference in Section 15.05(i) of the Business and Commerce Code—it did so only as evidence that Texas disfavors such restraints. Indeed, Section 15.05(i) merely lists considerations that a court may take into account in determining whether a given restraint is reasonable, Tex. Bus. & Com. Code Ann. § 15.05(i), and JCMD acknowledges that it "did not move for summary judgment on the ground that the Residual Benefit Clause violates [Chapter 15's general] rule of reason." *Cf. Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 688–91 (Tex. 2006) (analyzing Chapter 15 challenge to vertical restraint imposed by Coca-Cola on retailers, looking to federal jurisprudence interpreting comparable provisions of Sherman Antitrust Act, and applying rule of reason); *DeSantis*, 793 S.W.2d at 686–88 (distinguishing between noncompete analysis and Chapter 15 analysis, conducting each analysis separately, and in the latter, looking to federal case law and applying Chapter 15's general rule of reason).

Legislature's policy choices." *Id.* at 483–84, 490–91 (rejecting public policy challenge to lease provisions). Absent evidence of an identified statutory violation, neither we nor the trial court may override the Legislature's balance of policy interests by invalidating the terms of the parties' arms-length contract on uncodified public policy grounds. *See Fairfield Ins.*, 246 S.W.3d at 670 ("declin[ing] to invalidate the parties' workers' compensation contract to enforce a public policy urged by [one party] but not adopted by the Legislature").

The trial court's summary judgment cannot be sustained on this basis either.

## IV. Conclusion

The residual-benefit clause is not a noncompete, nor has JCMD shown it to be invalid on public policy grounds. We reverse the trial court's summary judgment and remand the case for further proceedings. *See* Tex. R. App. P. 43.2(d).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: July 27, 2023

16